IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHARLOTTE MAHONEY, Individually and on Behalf of All Others Similarly Situated;<br><br>Plaintiffs,<br><br>vs.<br><br>COMMONSPIRIT HEALTH,<br><br>Defendant. | 8:21CV23<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the plaintiff's motion for certification of a collective action, Filing No. 20. The plaintiff asserts individual and collective claims for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"). Plaintiff Charlotte Mahoney asserts that defendant CommonSpirit Health ("CommonSpirit"), failed to pay her, and other similarly situated employees, lawful overtime compensation for hours worked in excess of forty hours per week.

I.  BACKGROUND

In her amended complaint, the plaintiff alleges CommonSpirit has a uniform policy and practice of improperly paying their Analysts in violation of the Fair Labor Standards Act ("FLSA"), including not paying them for overtime hours.

She alleges she was employed by CommonSpirit as an Epic Analyst 1 from 2013 until March of 2020.[1] She brings her FLSA claims on behalf of all analysts employed by

---

[1] Commonspirit utilizes Epic Electronic Medical Records System (hereinafter, "Epic," a proprietary electronic medical record software application. *See* Filing No. 23-1, Ex. A, Declaration of Sonny Thatcher ("Thatcher Decl.") at 1-2. Epic is centered on a database management system and its applications support functions related to patient care, including registration and scheduling; clinical systems for doctors, nurses, emergency personnel, and other care providers; systems for lab technologists, pharmacists, and radiologists; and billing systems for insurers. *Id.* At its core, Epic is a database. *Id.* at 2. In December 2020, the "Epic Analyst I" job title changed to "Associate Software Engineer." *Id.* at 6.

1

CommonSpirit at any time within the applicable statute of limitations period, who were classified by CommonSpirit as exempt from the overtime requirements of the FLSA and who are entitled to payment of damages.  She alleges CommonSpirit classified her and other analysts as employees exempt from the FLSA and paid them a salary.  She alleges these analysts had substantially the same job duties and responsibilities, despite the slight variation in their job titles.  She alleges CommonSpirit directly hired analysts, paid them wages and benefits, controlled their work schedules, duties, protocols, applications, assignments and employment conditions, and kept at least some records regarding their employment.  She states that analysts were primarily responsible for performing data entry, setting up new users in CommonSpirit's computer system, and upgrading software.

She alleges CommonSpirit has deprived her, and other analysts, of overtime compensation for all of the hours worked over forty per week.  Further, she alleges CommonSpirit knew or recklessly disregarded whether its payment policies violated the FLSA.

In this motion, she seeks certification of a collective class defined as:

> All salaried Analysts employed by Defendant CommonSpirit Health and/or Catholic Health Initiatives, which merged with Dignity Health to form CommonSpirit Health, after January 19, 2018.[2]

Filing No. 20, Motion at 2.  In support of her motion, the plaintiff submits her declaration, purporting to show that she and other analysts are similarly situated.  Filing No. 20-7, Ex. 7, Declaration of Charlotte Mahoney ("Mahoney Decl.").  She provides a description of the job duties performed by her and others with the job classification of Epic Analyst 1 involve including adding hospital staff information to the Epic Electronic Medical Records

---

[2] This action was filed on January 19, 2021.

2


System, auditing the user database, working with human resources to add users to the system, updating doctor and nurse profiles, and uploading documents to SharePoint. *Id.* at 2. She further states that other analysts performed the same duties. *Id.* This work required the application of company policies and procedures created by Defendant's management but did not include exercising independent judgment about significant matters. *Id.* at 3. She states she and other analysts were not responsible for the design, development, documentation, analysis, testing, or modification of computer systems or programs, nor did they supervise other employees or participate in decisions about hiring, firing, promotion, or demotion of other employees. *Id.* at 2. She also states she regularly worked over forty hours per workweek and knows other analysts worked similar hours. *Id.* She states she and other analysts were not paid overtime wages for hours worked over forty per week. *Id.* She states it was standard practice for Commonspirit to pay analysts a flat salary with no overtime. *Id.*

Plaintiff also requests that this Court approve the plaintiff's proposed collective action Notice and Consent to Join Forms and order the defendant to provide relevant contact information for potential opt-ins. Filing Nos. 20-1 to 20-4, Exs. 1-4. Plaintiff's proposed email text directs the recipient to the attached court-approved Notice and provides a link to www.docusign.com, where the recipient can access an electronic version of the Consent to Join. Filing No. 20-3, Ex. 3. The text also gives instructions for signing the Consent electronically to avoid some minor but common mistakes. *Id.* The plaintiff requests that the potential opt-ins be provided a ninety-day period, beginning 7 days after the defendant provides contact information, in which to consent to join the action. Filing No. 21, Plaintiff's brief at 11, 15, 18.

CommonSpirit opposes the motion, asserting that plaintiff fails to offer the "substantial allegations" required for conditional certification and offers no evidence regarding other Epic analysts' duties. It contends plaintiff's conclusory allegations regarding other Epic analysts' overtime hours should be rejected and conditional certification should be denied because plaintiff fails to establish similarly situated individuals exist and that they worked overtime. It offers the declarations of CommonSpirit System Managers, who manage teams within the Epic Application Engineering Department. Filing No. 23-2, Ex. B, Declaration of Teresa Garcia ("Garcia Decl."); Filing No. 23-3, Ex. C, Declaration of Stephanie Carr ("Carr Decl.") They both state that:

> Because of the level of sophistication, skill, and expertise required (along with the Epic certifications recommended and sometimes required), [they] cannot move Epic Analyst 1s across teams as if they are 'plug and play.' The skills and duties applicable required of an Epic Analyst I on each team are different and uniquely tailored to that specific team's function.

Filing No. 23-2, Ex. B, Garcia Decl. at 1-2; Filing No. 23-3, Ex. C, Carr Decl. at 2. System manager Carr states that "[t]he Epic Analyst 1s on [her] teams work either a "modified telecommuter schedule" (requiring one day per week to be worked in the office, and the remaining four days are worked remotely) or a "100% telecommuter" schedule (work is completely remote - i.e., from the employee's home). Filing No. 23-3, Ex. C, Carr Decl. at 3. Garcia states, "The Epic Analyst 1s on my teams work remotely (i.e., from their homes), and are based in either Arizona or Florida." *Id.* at 3.

CommonSpirit also challenges the form and content of the plaintiff's proposed notice. It urges the Court to limit the proposed collective as those who worked as an Epic Analyst I, to limit the collective action period to three years from the date of this order, not the filing of the complaint, shorten the notice period to 45 days, clarify the language of the

4

claim from "unpaid over wages" to "unpaid overtime wages," omit any purported legal advice, and limit the collective list to that information necessary to effectuate notice, and extend the period to provide the from 14 to thirty days.

II.   LAW

Section 216(b) of the FLSA allows named plaintiffs to sue "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* The sole consequence of conditional certification under § 216 is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043 (2016) (assuming, without deciding, that the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure).[3]

"The plaintiff bears the burden of establishing he or she is similarly situated to other members of the proposed class." *Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060, 1066 (W.D. Mo. 2020) (quoting *Taylor v. Bear Commc'ns, LLC*, No. 4:12-CV-01261-BCW, 2013 WL 3270971, at *2 (W.D. Mo. June 27, 2013) (citation omitted)). "Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the

---

[3] The Supreme Court has hinted that the rules for joining similarly situated plaintiffs are similar to the rules of joinder under Federal Rule of Civil Procedure 20(a). *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1636 n.3, (2018)( Ginsburg, J., dissenting) (indicating that "similarly situated" FLSA plaintiffs may be joined in the same action under Federal Rule of Civil Procedure 20(a), which requires that their claims arise out of the same transaction or occurrence and involve common questions of law or fact).

5

plaintiffs.'" *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014)("*Bouhaphakeo I*"), *aff'd*, 136 S. Ct. 1036 (2016) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)); *see also Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018) ("Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."). "While the FLSA does not define the term 'similarly situated,' courts have held that plaintiffs "need show only that their positions are similar, not identical to the positions held by the putative class members.'" *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)); *see also Morisky v. Public Serv. Elec. and Gas Co.*, 111 F.Supp.2d 493, 498 (D.N.J. 2000) ("[A] collective action would only be appropriate where the plaintiffs make some showing that the nature of the work performed by other claimants is at least similar to their own." (internal quotations and alterations omitted)).

Although the Eighth Circuit has not articulated a standard for conditionally certifying FLSA classes, the majority of the district courts in the Eighth Circuit use the two-step analysis set out in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). *Haworth*, 448 F. Supp. 3d at 1066; *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 688-89 (W.D. Mo. 2007) (collecting cases). "First, plaintiff moves for conditional certification at an early stage in the litigation, wherein a class is certified for notice purposes. Then, at the second step, defendants are allowed the opportunity to move for

6

de-certification at the close of discovery." *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005).

During the first stage, "the 'similarly situated' threshold requires only a 'modest factual showing.'" *Kautsch*, 504 F. Supp. 2d at 689 (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 306 (S.D.N.Y. 1998)). At the initial conditional-certification stage, the plaintiffs' burden is not rigorous; they must only show that there is a "colorable basis for their claim" and "that a class of similarly situated plaintiffs exists." *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005). Courts do not evaluate the merits of the plaintiff's claim at this early stage. *Haworth*, 448 F. Supp. 3d at 1066. Instead, a plaintiff need only establish a colorable basis for a claim that the putative class members were together the victims of a single decision, policy, or plan. *Id.* This lenient standard generally results in conditional certification of a representative class. *Id.* Any doubts in the notice stage should favor allowing conditional certification. *Id.*; *see also Mooney*, 54 F.3d at 1213-14; *Grayson v. K Mart*, 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the "similarly situated" standard is considerably less stringent than Rule 23(b)(3) class action standards); *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2020 WL 2085650, at *2 (E.D. Mo. Apr. 30, 2020) (stating that at the first stage, conditional certification, courts typically apply a lenient standard).

At the decertification stage, however, the standard is stricter, and three factors are analyzed: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff, and (3) fairness and procedural considerations. *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012). Ultimately, whether "disparate factual and

employment settings of the individual plaintiffs" are sufficient to bar collective treatment is a question for the second stage of the certification process. *Id.*

The court overseeing the action has discretion to authorize the sending of notice to potential plaintiffs, informing them of the opportunity to opt in. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989); *see also Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1046–47 (7th Cir. 2020). In the notice, the court must respect judicial neutrality and avoid even the appearance of endorsing the action's merits. *Hoffman-La Roche*, 493 U.S. at 174.

Under the FLSA, the statute of limitations is "two years after the cause of action accrued...except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Courts have generally held that where willfulness is in dispute, a three year statute of limitations applies at the conditional certification stage. *Ritz v. Mike Rory Corp.*, No. 12 CV 367 (JBW)(RML), 2013 WL 1799974, at *3 (E.D.N.Y. 2013). A "willful" violation of the FLSA occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see also Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2006). To be considered willful, the employer's conduct must be more than negligence. *McLaughlin*, 486 U.S. at 133.

Under 29 U.S.C. § 256, an opt-in class member's claim for relief under FLSA does not commence until the date the opt-in member's written consent to join the representative action is filed. *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 464 (3d Cir. 1994). The notice period under the FLSA generally should be measured from the date of the court's

order granting the motion for conditional certification, not from the date that the complaint was filed. *Ritz v. Mike Rory Corp.*, No. 12 CV 367 (JBW)(RML), 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013); see also *Doucoure v. Matlins Food, Inc.*, 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) (stating the end point for the lookback period for providing notice is generally the date of the notice, i.e., notice of pendency would be provided to potentially similarly-situated plaintiffs employed by defendant in three-year period preceding date of the notice).

III.  DISCUSSION

The Court finds the plaintiff's motion for conditional certification should be granted. Based on the factual record before the Court, the plaintiffs have provided enough support for their allegations that a class of similarly situated employees likely exist based on potentially FLSA-violating policies that, if proven, would give rise to class-wide liability. *See Bouaphakeo I*, 765 F.3d at 796. Mahoney has met her lenient burden of establishing that she and the collective class members were victims of a single decision, policy or plan. Specifically, plaintiff offers her declaration that she and potential opt-ins perform similar tasks and are subject to the same conditions. The defendant has not shown that any differences in the tasks or responsibilities between Epic Analyst 1s are material. CommonSpirit's business practices do not appear to vary in any meaningful way between individual analysts.

The defendant's arguments in opposition to collective class certification are the sort of merits-based inquiries that are properly addressed at the second (decertification) stage. The present motion involves only the first step of the collective class certification process, i.e., whether the proposed opt-in members are "similarly situated" such that

9

conditional certification and notice are appropriate. Also, the defendant's arguments would require the Court to assess credibility. Further, the Court rejects the CommonSpirit's suggestion that the plaintiff simply cannot know the facts that she has alleged because of CommonSpirit's remote work policies. In her declaration, the plaintiff states that her allegations are based on personal knowledge, and it is reasonable to infer that an employee would have personal knowledge of the conditions of her own employment as well as the conditions of other employees holding similar positions.

Because the plaintiff has satisfied her burden at this first stage of the certification process, the Court finds the plaintiffs' motion for conditional collective class certification should be granted. The Court finds that the plaintiff has demonstrated that she and other analysts are similarly situated for purposes of conditional certification and distribution of notice. The Court finds a collective class consisting of the following should be certified in this case:

> All salaried persons employed in the three years preceding the date of this order by CommonSpirit Health and/or its predecessors Catholic Health Initiatives and/or Dignity Health in a position titled Analyst 1 or Associate Software Engineer.

The Court has reviewed the plaintiffs' proposed notice and opt-in consent forms and generally finds they are satisfactory. Nevertheless, the Court finds some of the defendant's criticisms of the proposed notice are well taken. Plaintiff does not dispute that the class definition should identify the job title as "Epic Analyst I" or that the subject line of the Notice should read "Unpaid Overtime Wages" rather than "Unpaid Over Wages." Accordingly, the Court will direct the plaintiff to make those changes in the notice.

The defendant characterizes the language set out in paragraph 11 of the proposed notice as improper legal advice.[4] The plaintiff argues that the provision merely "addresses the reality that formerly-employed collective members may have signed severance agreements purporting to waive claims under the FLSA" and FLSA rights are not subject to waiver. Filing No. 24, Plaintiff's Reply Brief at 14. Although there is no evidence as to whether any former employees signed such waivers, the Court finds the information conveyed in that paragraph is relatively innocuous and will allow the provision to remain in the notice.

The plaintiff proposes sending notice of the lawsuit to potential class members using U.S. mail and email and later sending a reminder postcard and email. The Court finds a one-time contact via U.S. mail and email followed by a follow-up postcard and/or email to potential opt ins who have not responded is not overly intrusive and will likely be sufficient to notify potential opt-ins of the action. The defendant has not shown good cause to shorten the opt in period to less than a ninety-day period of time, but in the interest of justice, the Court will order the defendant to produce a list of the names, last known mailing addresses, and email addresses for potential collective members within thirty days.

---

[4] That paragraph provides:

> EFFECT OF SEVERANCE: If you are a former employee of Defendant, you should not be discouraged from participating in this lawsuit merely because you may have signed a severance agreement or similar release upon or following termination of your employment. The impact that this type of agreement has on any claims you may have against Defendant is an issue to be decided by the Court.

Filing No. 20-1, Proposed Notice at 3.

11

The defendant contends the appropriate collective period should be three years from the date the Court enters any conditional certification order, not from the date of the filing of the original complaint.  The Court agrees.  The notice shall be directed to potential opt-in plaintiffs who worked for CommonSpirit during the three years preceding the date of this order, and the dates on the notice shall be modified accordingly.  Therefore,

IT IS ORDERED that:

1.     Plaintiff's motion for conditional collective class certification (Filing No. 20) is granted.

2.     This action is certified as an FLSA collective action, consisting of:

> All salaried persons employed in the three years preceding the date of this order by CommonSpirit Health and/or its predecessors Catholic Health Initiatives and/or Dignity Health in a position titled Analyst 1 or Associate Software Engineer.

3.     Defendant shall produce to plaintiff the names, last known addresses, and all email addresses for potential opt-in plaintiffs, in an electronically manipulatable format, such as Excel, within 30 days of the date of this order.

4.     Plaintiff's proposed collective action mail and electronic notices (Filing No. 20-1 & 20-3), proposed mail and electronic proposed consents to join (Filing Nos. 20-2 & 20-4), proposed postcard notice (Filing No. 20-5), modified as set forth in this Memorandum and Order, are approved.

5.     The use of the internet link to electronic versions of the notices and consents to join and the use of DocuSign to facilitate electronic signature and submission of consents to join is approved.

6. Plaintiff is grated leave to send the approved notices to potential opt-in plaintiffs via U.S. Mail and email, with one follow-up notice to potential collective members who do not respond within 30 days of the sending of the Notice.

Dated this 14th day of December 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge